IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SCOTT A. SELDIN,

Plaintiff,

vs.

THEODORE M. SELDIN, STANLEY C. SILVERMAN, and MARK SCHLOSSBERG,

Defendants.

**8:16CV372**

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Theodore Seldin's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Filing No. 17, and a motion by the plaintiff, Scott Seldin, for an accounting pursuant to Fed. R. of Civ. P. 3, Filing No. 2.[1] The plaintiff Scott Seldin seeks an accounting pursuant to Neb. Rev. Stat. § 30-3890(b)(4) related to a trust in which he was the beneficiary and Theodore Seldin and Stanley Silverman served as the trustees.[2] Scott Seldin contends that this matter arises from the unauthorized and undisclosed self-dealing by these two trustees of the family trust. Scott Seldin requests an accounting from 1992 through 2002 of the MSCM trust, discussed hereinafter. Filing No. 1 and Filing No. 2. Plaintiff asks this Court to exercise its power in this case and order the trustees to account for the properties by allowing access to the records by an independent third-party auditor. Defendant Theodore Seldin contends that this Court lacks subject matter jurisdiction, as there is an agreement to arbitrate that binds the parties. Filing No. 17.

[1] Plaintiff also moves to file a sur-reply brief and evidence, Filing No. 31, and defendant Theodore Seldin opposes said request, Filing No. 32. The Court will deny the motion, as it has received more than enough briefing in this case to make a decision.

[2] Stanley C. Silverman passed away on September 7, 2016.

**BACKGROUND**

Ted, Stan and Mark Seldin served as trustees for a trust, Millard Seldin Children's Master Trust ("MSCM Trust"), created by Scott Seldin's father, Millard R. Seldin. Scott Seldin is named in the MSCM Trust as a beneficiary along with his two siblings, Traci Seldin Moser and Derry Seldin. Scott's father, Millard, established a trust for Scott and his siblings. Scott's uncles, Ted and Stan Seldin, now estranged from Millard and Scott, were designated as two of the trustees (Ted and Stan Seldin will be collectively referred to as "Trustees"). Among other things, the Trustees allegedly overcharged on lease commissions paid to them under management agreements related to the trust in breach of their fiduciary duties. Also, according to Scott Seldin, the Trustees never submitted a trust report to Scott Seldin or any other beneficiary as required by Nebraska law. Filing No. 1, Complaint, ¶ 8. The MSCM trust required an accounting at least annually.[3]

[3] The arbitrator found:

> "[T]he MSCM Trust provide[s] that the 'Trustees shall render an account at least once each twelve months'" (Award 1 ¶ 15 at 5). "MSCM Trust . . . limits . . . powers and authority of the Trustees, by providing, 'none . . . shall be construed to enable . . . Millard . . . [or] the Trustees . . . to . . . dispose of either the principal or the income of the Trust for less than adequate consideration . . . '" (Award 8 ¶ 1 at 1-2; Award 1 ¶ 10 at 3). "Millard anticipated there could be an appearance of impropriety if future transactions occurred between the MSCM Trust and one or more of the family-owned business entities; even when the parties acted in good faith and exchanged adequate consideration"

Filing No. 18, (Award 8 ¶ 1 at 1-2; Award 1 ¶ 7 at 3 ).

On February 18, 2010, the parties entered into a Separation Agreement, designed to split the assets in the many trusts with the help of a mediator. Filing No. 18-2, Ex. 1. The purpose of the agreement was to (1) help separate out the interests between the Omaha Seldins and the Arizona Seldins,[4] and (2) establish arbitration as the exclusive remedy.

Millard Seldin, Ted and Stan Seldin, Scott Seldin and others entered into a Separation Agreement. With regard to the MSCM Trust, the arbitrator determined that "there is little meaningful evidence . . . to explain how the Trustees handled their annual reports" to Scott. (Filing No. 18-44, Award 1 ¶¶ 15, 16 at 5). The arbitrator found it "was not until October 2008 that [the Trustees] provided [Scott] with sufficient detailed financial information for [him] to reasonably recognize on a per property basis that the management fee provisions in the Management Agreements may have been erroneously applied by Seldin Company over an extended period of time" (Filing No. 18-47, Award 8 ¶ 1 at 1-2; Filing No. 18-45, Award 2 ¶ 20 at 5). The arbitrator further found, on January 27, 2016, that:

> "On several occasions, the authorized representatives of the Seldin Company, including Stan, unilaterally and erroneously charged the Owners [including Scott or entities holding his interests] lease fees . . . . The Seldin Company has breached the Management Agreements by overcharging [Scott and others] lease commissions . . . Thus, the overcharged lease commissions paid by [Scott and others] total $257,392. "[T]here is no factual, legal or equitable basis to support findings that . . . the commissions paid to the Seldin Company . . . for the lease transactions . . . were the result of a mutual mistake . . ."

[4] Scott and Millard Seldin are referred to as "Arizona Seldins" and Ted and Stan Seldin are referred to as "Omaha Seldins".

Filing No. 18-47, Award 8 ¶ ¶ 11, 13 at 4-5).

The arbitrator further determined that there existed over fifteen hundred boxes of paper records and an electronic Timberline financial accounting system used by the Trustees since 1998. (Filing No. 18-47, Award 8 ¶ 1 at 1-2; Filing No. 18-44, Award 1 ¶ 29 at 11).

On July 4, 2015, the arbitrator also found that Scott Seldin "breached . . . fiduciary duties of care and loyalty, which [he allegedly] owed to SD&M, MTS, Ted and Stan, and that [Scott allegedly] violated applicable securities statutes when Millard [allegedly] orchestrated the Sky Financial Transactions" (Filing No. 18-50, Award 13 ¶ 73 at 21). The arbitrator found "[Scott has] failed to meet [his] burden of proving that Millard properly disclosed the Sky Financial Transactions and . . . MSCM Trust's investment in SVP Restaurant to SD&M and MTS . . . (Filing No. 18-50, Award 13 ¶ 46 at 14). The arbitrator further found, despite that "SD&M and MTS . . . received a 100.043% total return on . . . the Sky Financial Transactions[,] . . . [t]he breach of fiduciary duties and securities law violations committed by . . . [Scott allegedly has] damaged . . . [the Trustees]" (Filing No. 18-50, Award 13 ¶¶ 65, 74 at 19, 21). The arbitrator stated: "On or before August 1, 2016, [Scott] shall provide to [the Trustees] a reasonably detailed written accounting of all distributions received directly or indirectly by . . . the MSCM Trust . . . from or through SVP Restaurant . . . since November 2000 arising out of or related to the management of Sky Financial" (Filing No. 18-50, Award 13 at ¶ 75 at 22).

Scott Seldin filed a motion on November 17, 2015, asking the arbitrator to clarify whether the arbitrator believed he had no jurisdiction to require an accounting under

Nebraska trust law or whether the trustees were somehow exempt from such an accounting. The arbitrator replied on November 29, 2015. He denied the motion, giving no explanation for his decision.

Three previous lawsuits were filed in this case. First, on April 17, 2012, the Arizona Seldins filed an action in Douglas County Nebraska District Court. It was dismissed on August 8, 2012. The Arizona Seldins filed a second lawsuit in Douglas County Nebraska District Court. Following a motion to dismiss by the Omaha Seldins, the court dismissed this case likewise. The Arizona Seldins then filed a demand for arbitration. On December 27, 2012, the Arizona Seldins filed a third lawsuit in Douglas County Nebraska District Court. On April 1, 2013, the court again dismissed the lawsuit. The Arizona Seldins filed 4 appeals. On February 14, 2014, the Arizona Seldins sued Mr. Tucker and Venable, LLP, (the previous arbitrators) alleging negligence, breach of contract, tortious interference. The Douglas County Nebraska District Court granted summary judgment against the plaintiffs on all claims. The Omaha Seldins then filed a suggestion of mootness and motion for summary dismissal with the Nebraska Supreme Court. The Nebraska Supreme Court granted the motion and dismissed the appeals on August 13, 2013.

Thereafter, the American Arbitration Association appointed Eugene R. Commander as the new arbitrator and the arbitration proceedings recommenced in October 2013. Multiple claims were bifurcated and hearings held and some decisions entered by the arbitrator. Some of the claims were still under advisement as of October 3, 2016. The ancillary damages alleged by the Arizona Seldins exceeded $30 million.

**DISCUSSION**

"Collateral estoppel applies when an issue of ultimate fact has been determined by a final judgment, and that issue cannot again be litigated between the same parties in a future lawsuit. *Pipe & Piling Supplies v. Betterman & Katelman*, 596 N.W.2d 24, 28 (Neb. Ct. App. 1999). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party [(or his or her privy)] to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). "The doctrine of res judicata . . . provides that a final judgment on the merits is conclusive upon the parties in any later litigation involving the same cause of action." *Petska v. Olson Gravel, Inc.*, 500 N.W.2d 828, 833 (1993) (citing Kerndt v. Ronan, 458 N.W.2d 466 (Neb. 1990)).

For the reasons set forth herein, the Court finds that the plaintiff is collaterally estopped from reasserting these claims in this Court and that res judicata applies as well. The Court finds that the parties entered into a valid and enforceable arbitration agreement as concluded by the Douglas County District Court. Two judges of the Douglas County District Court have entered four judgments finding Scott Seldin cannot avoid his obligation to arbitrate as required by the Separation Agreement. Filing No. 18-7, Ex. 6; Filing No. 18-9, Ex. 8; Filing No. 18-12, Ex. 11; Filing No. 18-20, Ex. 19. Those findings encompass the accounting claim Scott Seldin seeks to pursue here. The state court ordered Scott Seldin to arbitrate his claims. He is required to arbitrate these

claims in the first instance. In the alternative, however, the Court will address Scott Seldin's claim that these doctrines do not apply.

If, in the alternative, neither collateral estoppel nor res judicata apply, Scott Seldin urges this Court to find that the arbitrator has no authority to order trustees of the MSCM to account for the holdings. However, the Court disagrees.[5] It is up to the arbitrator to determine what is in his jurisdiction and subject to arbitration. *See e.g., Valspar Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 104 F. Supp.3d 977, (D. Minn. 2015) (finding that an arbitration clause reserved to arbitrators exclusive jurisdiction over questions as to arbitrability, and that "even if some doubt exists whether this matter should be arbitrated or litigated, that question has been 'clearly and unmistakably delegated to the arbitrators' to decide in the first instance."). Second, the Nebraska State District Courts likewise found that it was up to the arbitrator to decide the issue of arbitrability.

Third, this Court independently concludes that the arbitrator has a right to make this determination first. The Separation Agreement incorporates AAA Commercial Rules, including Rule 7, which allows the arbitrator to determine his own jurisdiction.[6] "'Just as the arbitrability of the merits of a dispute depends upon whether the parties

---

[5] The Court also believes it is barred by the *Rooker-Feldman* doctrine, which prevents losing state court litigants from attempting to indirectly attack state court findings in federal district courts. *See Friends of Lake View Sch. Dist. No. 25 v. Beebe*, 578 F.3d 753, 758 (8th Cir. 2009) (quoting 18B Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 4469.1 at 97, 101 (2d ed. 2002)) ("'only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'").

[6] Rule 7(a) of the AAA Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Affidavit of Colin J. Bernard, Oct. 3, 2016, Filing No. 18-55, ¶ 3, Ex. 1 R-7(a).

agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.'" *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877 (8th Cir. 2009) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Further, these issues have been involved in arbitration for over 5 years, and it appears that some of these exact claims have already been asserted before the arbitrator. *See* Filing No. 18-1 at ¶ 48, Ex. 42 ¶ 74 p. 52, ¶ 113 p. 59, ¶ 178 p. 88, ¶ 265 p. 94, ¶ 335 p. 118; Filing No. 29-1 at ¶ 2, Exs. 54-62. It appears that many of the assets initially held in the MSCM are now part of the Separation Agreement assets. The parties are in the midst of addressing many of these issues in arbitration. Accordingly, for these reasons, the Court finds the arbitrator is entitled to determine arbitrability in the first instance.

The final question is whether the Court should stay these proceedings or dismiss the case during arbitration. It is true that Section 3 of the FAA specifically instructs the Court to stay the proceeding, but the Eighth Circuit has set forth a rule "which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.,* 653 F.3d 766, 769-70 (8th Cir. 2011); *see also* *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015) (stating that a district court on remand may decide to dismiss or stay an action in federal court, pending the outcome of an arbitration). Section 9.14.1 of the Separation Agreement states:

> The Arizona Seldins, on the one hand, and the Omaha Seldins and the Management Company, on the other hand, will in good faith attempt to resolve promptly and amicably ***any dispute*** between them arising out of or relating to this Agreement (including claims for breach of a

> representation, warranty, or covenant of this Agreement), relating to or based upon an Ancillary Claim or otherwise arising from or relating to the Parties' joint ownership of the Properties or Entities (a "Dispute"). (emphasis added)

Filing Nos. 18-1 and 2, Affidavit of Robert L. Lepp, ¶ 2, Ex. 1 p. 36 § 9.14.1. This is broad and encompassing language. *See Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997). This language coupled with the subject matter in dispute and the issues already presented to the arbitrator leads the Court to the conclusion that this case should be dismissed at this time.

THEREFORE, IT IS ORDERED THAT:

1. Plaintiff's motion to file a sur-reply brief, Filing No. 31, is denied.

2. Plaintiff's motion for an accounting, Filing No. 2, is denied.

3. Defendant's motion to dismiss, Filing No. 17, is granted. This case is referred to the arbitrator for further review. The case is otherwise dismissed.

4. A separate judgment will be entered in accordance with this memorandum and order.

Dated this 6th day of December, 2016

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge